227

American Welding Company

vs.                Eq. No. 4298

William H. Haskell Manufacturing Co.

RESCRIPT

September 20, 1918

BARROWS, J. Heard on bill, sworn answers, replication and oral testimony on issues of fact.

The facts alleged in the bill to show collusion have failed of proof. Complainant has abandoned his claim to ·a reformation of the deed. If he has any equitable standing, the basis upon which relief should be granted is not mistake or fraud.

The facts proven at the hearing on preliminary injunction and the legal issues involved were fully set forth in our former rescript and we see no reason to change our views on those facts. Our present inquiry, therefore, is whether the new evidence alters the situation. We have come to the conclusion that it does.

At the former hearing there was no evidence showing that respondent ac-

cepted any of the lessor's obligations in complainant's lease other than such as existed by reason of respondent holding lessor's title. There was neither evidence of any express promise nor evidence upon which a promise upon the part of respondent to pay the mortgage debt could be implied. The sworn answers denied such promise. We therefore found that respondent was acting within its legal rights in purchasing at foreclosure sale and that it took and could hold a title clear of all leases given subsequent to the mortgage.

At the present hearing oral evidence brought out much that was not apparent from the answers. The facts as now established show that William H. Barclay, acting as agent of the respondent, received a deed June 18; 1917, from Susan C. Brown of certain real estate. The deed contained the words "this conveyance is made subject to mortgage to the Slater Trust Company for 25,-000". Barclay was acting under the direction of a Mr. Arnold but did not

know for whom he was purchasing the property. At that time complainant and others occupied portions of the premises under leases which had been executed subsequent to the mortgage. These facts were fully known to Barclay and to Arnold. The negotiations for the purchase were conducted with Barclay by Henry E. Tiepke representing Mrs. Brown. Because of illness we have not the benefit of Mr. Tiepke's testimony. Mr. Barclay says that there was no talk of the assumption of the mortgage debt by him; that he made an offer of $80,-000 for the full title to the property and that Tiepke made a counter offer to sell the property for $90,000; that Barclay, acting under authority from respondent, accepted Tiepke's proposition. Barclay paid $2,000 to bind the bargain. From the agreed price of $90,000, the mortgage debt of $25,000 was deducted. Certain other adjustments were made with regard to rentals, insurance, water bills, etc. There actually passed at the

time the deed was given, $63,300.

There was considerable evidence regarding a written option signed by Mrs. Brown and whether the sale was consummated in accordance with it. This option contained the statement that Barclay was to assume the payment of the mortgage debt, but complainant offers no evidence to show that this clause was inserted pursuant to any agreement on the part of Barclay. Mr. Boss, who drew the option at Tiepke's request, has no recollection of being told by Tiepke to put in such a clause. He says that he may have done so as a precaution. Barclay testifies positively that he never agreed to pay said debt and his testimony stands undisputed. He says that it was for Arnold to say what should be done about the mortgage. He and Arnold never noticed that the option contained a clause assuming payment. There are other facts in evidence which satisfy us that the sale was not closed pursuant to this option. We are confident, however, that the parties expected that Mrs. Brown was to be eliminated from further liability for the mortgage debt. Respondent's vice-president and general manager, Whittaker, says that they figured the property would eventually cost respondent $90,000. Mr. Arnold says that Mrs. Brown "wanted to be looked after somewhere on the mortgage". He adds that she was protected fully by the value of the property. He however states at another point in his testimony that he expected the mortgage to remain. The Court cannot fail to note that if the mortgage had remained, complainant's lease also would have remained. Arnold says that at the time of the purchase he had in mind how the mortgage might be treated so as to get rid of the leases. He says the suffering of the foreclosure sale in order to cut out the leases then originated with him. We have our doubts about this. The plan was not communicated to Barclay. It was almost too clever for a layman to evolve at the time of the purchase. We cannot

believe that one capable of evolving so clever a plan would have permitted all

229

negotiations to proceeds between Barclay and Tiepke with talk about the purchase price fo $90,000 for the full title and the withholding from this purchase price of the mortgage debt of $25,000. He would have made it plain beyond all doubt that he was buying only the reversion, and that he had no interest as to what was done about the mortgage debt. In connection with Arnold's claim that he had in mind how the mortgage might be treated, it is also significant that Whittaker says the policy of allowing foreclosure had not developed when he first talked with Gell about the removal just after the property had been conveyed to respondent on June 18. If Aronld had conceived the plan, he had not communicated it to the manager of the respondent company at the time the property was purchased. As the deal actually was put through we believe that negotiations were for a full title and that the purchaser held back the amount of the mortgage debt to take care of the same at its convenience. We are satisfied that Mrs. Brown's personal responsibility was believed by all parties to have ceased with the transfer of her title. Rents were accepted "as per lease". Mrs. Brown at the time of passing the deed signed transfers of the insurance policies and was about to sign transfers of the leases when she was stopped because it was not known by Barclay for whom he was acting and to whom transfers were to be made. Mrs. Brown then agreed that she would later sign whatever else was necessary to transfer her rights to respondent. Notices were given to tenants that respondent company was the owner of the property and that all matters pertaining to their leases should be taken up with respondent.

In August the interest fell due on the mortgage note. The Slater Trust Company notified respondent and the latter declined to pay said interest. Its

treasurer was informed that failure to pay meant foreclosure and said that he was aware of it. Foreclosure did not follow and respondent at an open and fair sale, that was not procured directly or indirectly by it, bid in the property for $26,000 and received a mortgagee's deed. Its position was one of mere passivity in regard to the foreclosure. Respondent claims that it entered the field at said foreclosure sale like any other purchaser; that the sale was open to the world; that the Trust Company could convey a clear title and that the purchaser at foreclosure sale acquired the title free from all leases executed subsequent to the mortgage. Acting upon such theory respondent sought to eject complainant and it is to stop such proceedings that the present bill is brought.

Evidence of irregularity at the foreclosure sale is overwhelmingly denied by witness in whom we have the utmost confidence. We feel certain that the sale was legal and fair and thrown open to all bidders, and that nothing was done by respondent at the sale other than to purchase the property

230

in open market. We believe that the plan of suffering foreclosure did not exist at the time Barclay took his deed but was adopted by respondent after negotiations to get complainant out had resulted in an offer of $800 to cover his expenses, and a counter proposal from him of $14,000. It probably was adopted after legal advice.

We are thus confronted with the question whether respondent occupied a position which precluded its purchasing and holding a clear title at the foreclosure sale. We believe this depends on whether respondent was under any legal obligation to pay the mortgage debt. The weight of authority holds that in the absence of an express agreement not to do so, an implied obligation to pay the mortgage debt may be found from the circumstances of the transfer. The proposition is stated in 27 Cyc 1349:

"Where land is sold subject to a

mortgage and the amount of the mortgage debt has been deducted and retained by the purchaser out of the agreed price, he will be held to have assumed the payment of the mortgage"; citing cases which sustain the text.

Siegel vs. Borland, 191 Ill. 107.

Heid vs. Vreeland, 30 N. J. Eq. 591.

Cf. also Mechanics Sav. Bank vs. Goff, 13 R. I. 516 & 518.

See also to the same effect

20 Am. & Eng. Ency. 991;

Jones on Mortgages, 7th ed. Sec. 749.

The circumstances formerly recited convince us that respondent by reason of an implied agreement owed Mrs. Brown the duty to pay the mortgage debt. Performance of this duty would exonerate her from any liability on said debt and from personal responsibility under the leases arising from a breach of the covenant of quiet enjoyment in case of mortgage foreclosure. If the agreement to pay can be implied, respondent admits that most courts would have allowed the Trust Company, as mortgagee and beneficiary of the promise, to enforce the same. We know of no case or principle under which to allow indirect beneficiaries to directly enforce such a promise, but we believe that indirect beneficiaries of such a promise ought to have at least an equitable right to prevent respondent from erecting a superior legal title on the foundation of a violation of its duty to Mrs. Brown. Where a purchaser's agreement to pay a mortgage debt has not been kept, he ought not to be permitted at the foreclosure sale to step into the position of a disinterested purchaser. The mortgagor can sell free and clear of encumbrances, but the wrongdoer ought not to be permitted to take and hold free from the same. Here respondent owed Mrs. Brown the duty to prevent foreclosure. Failure to perform this duty, if the property had been purchased by a stranger and complainant ejected, would have rendered her liable to complaint under the covenant of quiet

enjoyment in the lease. It is true that she is not asking any complaint against respondent for non-performance of its promise and respondent's contention that any implied promise to pay the mortgage debt was in fact only a promise to indemnify Mrs. Brown if she were compelled to pay said debt, may be correct; but performance of the duty to pay the debt was indirectly for the benefit of complainant, and it seems to us equitable to hold that complainant may enjoin respondent from ejecting him rather than be forced to proceed by suit for damage against Mrs. Brown, after ejectment. Upon a violation of respondent's duty to pay the mortgage debt, equity ought not to permit respondent to erect rights against those who would have been protected had respondent's duty to care for said debt been performed.

We therefore believe that respondent was in a situation which in equity prevented it from holding, after purchase at foreclosure sale, a clear title upon which to eject complainant. We believe that complainant's equity attaching to the land during Mrs. Brown's ownership clung to it while in respondent's possession, before the foreclosure sale by reason of respondent's holding Mrs. Brown's interest, and after the foreclosure sale by reason of respondent's breach of its obligation to pay the mortgage debt.

The injunction sought may therefore be granted.

For complainants: Easton. Williams and Rosenfeld and John J. Fitzgerald.

For respondents: Gardner, Pirce and Thornley.